**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl D Snow, Jr, | No. CV-22-08004-PCT-SPL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Carl D. Snow Jr. challenges the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of his Application for Social Security Insurance Benefits under Title II of the Social Security Act ("the Act"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial. (Doc. 1). The Court has reviewed and now addresses Plaintiff's Opening Brief ("OB"), Defendant's Answer ("AN"), Plaintiff's Reply ("Reply"), and the Administrative Record ("AR"). The Court finds the Administrative Law Judge ("ALJ") improperly rejected Plaintiff's symptom testimony, and in so doing committed legal error and based her decision on less than substantial evidence. Accordingly, the Court remands the case for further proceedings.

**I.      BACKGROUND**

Plaintiff filed the present application Disability Insurance Benefits on February 5, 2019, alleging disability as of November 11, 2019. (AR 221). The Social Security Administration ("SSA") denied his application at the initial and reconsideration levels of

administrative review. (AR 143, 150). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (AR 159–60). Following the hearing, the ALJ issued a decision finding Plaintiff "not disabled."[1] (AR 32).

In her decision, the ALJ found that Plaintiff had severe[2] impairments of obesity, multilevel degenerative disc disease, shoulder degenerative joint disease, bilateral carpal tunnel syndrome, right hand deformity of first metacarpal, and diabetes. (20 CFR 404.1520(c)) (AR 17). The ALJ also acknowledged that Plaintiff had been evaluated for, diagnosed with, and/or treated for hypertension, thyroid disorder, gastroesophageal reflux disease (GERD), headaches, tinnitus, and hearing loss. (AR 17). However, the ALJ determined these conditions non-severe as they had no more than a minimal effect on Plaintiff's ability to perform basic mental or physical work activities. (AR 17).

Similarly, the ALJ found Plaintiff's medically determinable mental impairments (depressive disorder, anxiety disorder, and adjustment disorder with mixed anxiety and depressed mood) non-severe because they caused no more than minimal limitations in Plaintiff's ability to perform basic mental work activities. (AR 18). In reaching this determination, the ALJ considered Plaintiff's functional limitations in the following categories, together knowns as the paragraph B categories: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a (c)(3). (AR 20–21). The ALJ determined Plaintiff had only mild limitations in each of the paragraph B categories. (AR 17–18).

Despite his impairments, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined by 20 CFR 404.1567(b) with the following exceptions:

---

[1] "Disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A).

[2] "[A]ny impairment or combination of impairments which significantly limits [a person's] physical or mental ability to do basic work activities" is considered "severe." 20 C.F.R. § 404.1520 (c)

> the claimant can never climb ladders, ropes, or scaffolds, frequently climb ramps or stairs, frequently crawl or balance, occasionally stoop, crouch, or kneel, occasionally reach overhead bilaterally, frequently handle and finger with the left nondominant hand, and occasionally handle and finger with the right dominant hand. In addition, the claimant can have occasional exposure to non-weather related extreme cold, excessive vibration, concentrated pulmonary irritants such as fumes, odors, dust, or gases, poorly ventilated areas, dangerous moving machinery, and unprotected heights. **(AR 22)**

Based on the above and testimony from a neutral vocational expert ("VE"), the ALJ found Plaintiff could perform work as furniture rental consultant, laminating machine offbearer, or fruit distributor and was therefore not disabled. (AR 31). On November 9, 2021, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became final. (AR 1). Plaintiff appeals. (Doc. 1).

## II.     THE SEQUENTIAL EVALUATION PROCESS

In determining whether a claimant is disabled for the purposes of the Act, the ALJ must follow a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but that burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § 404.1520(a)(4)(iii) ("the Listings"). If so, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the analysis proceeds to step four where the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. *Id*. If he cannot, the analysis proceeds to the fifth and final step, where the ALJ determines

if the claimant can perform any other work in the national economy based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot, he is disabled. *Id.*

### III.   LEAL STANDARD

When determining whether to reverse the Commissioner's decision, this Court only reviews issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court will affirm the Commissioner's final ruling unless it is based on legal error or lacks the support of substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Though the Court must consider the record as a whole, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### IV.   DISCUSION

Plaintiff presents two issues for the Court's review. (OB 1). First, Plaintiff alleges the ALJ erred in her evaluation of medical opinion evidence. (OB 1). Secondly, Plaintiff argues the ALJ's failed to credit Plaintiff's symptom testimony. (OB 1). The Court addresses each of these issues in turn.

  A. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S EVALUATION OF MEDICAL OPINIONS.

As a preliminary matter, Plaintiff argues that her treating physician's opinions are "more supported by the medical evidence of record" because they examined and treated him on an ongoing basis and reviewed all available clinical and objective evidence. (OB

20). But the fact that NP Rowden and PA Rossi treated Plaintiff on an on-going basis is not inherently persuasive. Under the former SSA regulatory scheme, ALJs gave a treating physician's opinion "'substantial weight' and could only reject such opinion by providing 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise." *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). However, in 2017, the SSA revised its regulations regarding the evaluation of medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). As Plaintiff filed his case in 2019, it is governed by the new regulations. (AR 17). The ALJ was therefore not required to adhere to a hierarchy of medical opinions. 20 C.F.R. §§404.1520c(a)–(b). Rather, the ALJ meets her burden by articulating the persuasiveness of each opinion using factors set forth in the regulations. *Id.* Supportability and consistency are the most important of these factors but ALJs may also consider the nature of the treatment relationship, the medical source's specialization, and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§404.1520c(a)(c). Defendant argues that the ALJ properly addressed the medical opinions in accordance with the new SSA regulations. (AN 13). The Court agrees.

<u>PA Victoria Rossi</u>

In September 2020, PA Victoria Rossi completed a Physical Medical Source Statement at the request of the Social Security Administration. (AR 1072–79). She opined that Plaintiff's neck pain and radiculopathy would cause life-long pain in the absence of surgery. (AR 1072). NP Rossi found that any movement makes Plaintiff's pain worse, as did physical therapy. (AR 1072).

She determined Plaintiff could sit for 10 minutes before needing to get up, could walk for one block without rest or severe pain, could stand for 15 minutes before needing to sit or walk around, and could sit, stand, and walk for about 2 hours in an 8-hour workday. (AR 1073). PA Rossi also found Plaintiff would need unscheduled breaks about every 30 minutes during a normal 8-hour workday. (AR 1074). PA Rossi also opined that Plaintiff must use a cane or other assistive device, could occasionally carry less than 10 pounds, and

never carry more than 10 pounds. (AR 1074). She also found Plaintiff could never look down (sustained flexation of neck), rarely turn his head right or left, never look up, and occasionally hold his head in a static position. (AR 1074). Additionally, NP Rossi found Plaintiff could never climb ladders or stairs and only rarely twist, stoop, crouch, or squat. (AR 1075). Regarding Plaintiff's ability to use his hands, fingers, and arms during an 8-hour workday, PA Rossi found he could grasp, turn, or twist objects 10% of the time, perform fine manipulations 10% of the time, and reach (including overhead reaching) 5% of the time. (AR 1075).

PA Rossi opined that Plaintiff's pain or other symptoms were constantly severe enough to interfere with his attention and concentration needed to perform even simple work tasks. (AR 1073). She opined that Plaintiff was incapable of even low stress jobs as his pain "is constant and any stress would increase tension and makes [Plaintiff's pain] worse." (AR 1073). PA Rossi concluded that Plaintiff was likely to miss more than four days of work per month as a result of his impairments. (AR 1075).

The ALJ found PA Rossi's decision unpersuasive as it "is not supported by Ms. Rossi's own treatment records [] and is inconsistent with the greater record." (AR 28). In her report, PA Rossi found Plaintiff experiences pain, weakness of upper extremities, headaches, fatigue, paresthesia of the upper extremities, muscle spasms, dropping items, and decreased range of motion of neck. (AR 1072). But her examination notes from July 2020 state that Plaintiff's degenerative disk disease, back muscle spasms, spinal stenosis, and paresthesia of the upper extremities were all "acute." (AR 10 58). Additionally, PA Rossi found Plaintiff's neck and back had normal texture and palpitation upon inspection. (AR 1059). PA Rossi's September 2020 examination showed similarly insignificant results. (AR 1063–64). The ALJ reasonably found PA Rossi's opinion unpersuasive due to its internal inconsistencies.

<u>Nurse Practitioner Anthony Rowden</u>

Nurse Practitioner ("NP") Anthony Rowden submitted Medical Source Statements detailing his opinions regarding Plaintiff's physical and mental impairments, limitations,

and treatment. (AR 1066–1071, 1030–34). NP Rowden began seeing Plaintiff in April 2020 and had seen Plaintiff five times by the time he penned his statement. (AR 1066). His findings regarding Plaintiff's physical impairments and limitations were identical to those of PA Rossi. (AR 1030–34, 1072–79). With regard to Plaintiff's mental health, NP Rowden opined that Plaintiff's depression was severe and interconnected with his chronic pain. (AR 1066, 1070). Specifically, NP Rowden found Plaintiff's pain exacerbated his depression and anxiety. (AR 1070). NP Rowden opined that Plaintiff experienced marked or extreme limitations in interacting with others; concentrating, persisting, or maintaining pace; adapting or managing himself; maintaining regular attendance; performing at a consistent pace; completing a normal workday or workweek without interruptions from psychologically based symptoms; dealing with the stress of semiskilled or skilled work; interacting appropriately with the general public; using public transportation; and traveling to unfamiliar places. (1068–69).

In this report, NP Rowden stated that Plaintiff had received "some therapeutic benefit" from his medications but experienced lethargy, agitation, insomnia, daytime somnolence, and fatigue as side effects. (AR 1066). NP Rowden also found Plaintiff experienced minimal pain relief from his medications. (AR 1066). NP Norris determined Plaintiff's impairments would cause him to miss more than four days of work per month. (AR 1070).

The ALJ found NP Rowden's opinion unpersuasive because it is based on Plaintiff's subjective complaints, was not supported by NP Rowden's own treatment notes, was not consistent with the record, and was presented in the form of a checkbox with "minimal explanation for the proposed limitations." (AR 28). Plaintiff takes issue with the ALJ's condemnation of PA Rossi and NP Rowden's checkbox forms. (OB 22). Whether the ALJ erred in rejecting a medical opinion because it is in the form of a checkbox is a fact-specific inquiry. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

In *Batson*, the Ninth Circuit upheld the ALJ's rejection of a treating physician's

medical opinion because "it was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of Batson's medical condition, and was based on Batson's subjective descriptions of pain." *Batson,* 359 F.3d at 1195. The Ninth Circuit came to the opposite conclusion in *Garrison v. Colvin.* There, the defendant argued that the ALJ was entitled to reject treating physicians' opinions because they were presented in checkbox form. *Garrison*, 759 F.3d 995 at 1014. The Ninth Circuit disagreed because checkbox forms "did not stand alone: they reflected and were entirely consistent with the hundreds of pages of treatment notes created by [the physicians] in the course of their relationship with [the plaintiff]." *Garrison*, 759 F.3d 995 at n.17.

Like the checklist in Batson, NP Rowden's report contained little explanation in support of the proposed limitation.  (AR 1066-71). 20 C.F.R. § 404.1520c(c)(1). ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions. . . will be."). The report does not site to NP Rowden's own notes or other record evidence. (AR 1066–71). In fact, NP Rowden states that he did not review Plaintiff's records from other providers during treatment or while completing the form. (AR 1071). Additionally, the ALJ reasonably concluded that NP Rowden's opinion is based on Plaintiff's subjective complaints as NP Rowden failed to cite objective medical evidence in support of his conclusions. (AR 28). Furthermore, NP Rowden's proposed limitations conflict with most of Plaintiff's mental health records which show normal findings. (AR 934, 1037-38, 1050-51, 1085, 1098, 1145, 1150, 1158, 1195, 1242, 1329). Similarly, PA Rossi's proposed limitations conflict with both her July 2020 and September 2020 examination results.  (1058–59, 1063–64).

### Dr. Diane Bejerano

Dr. Bejerano saw Plaintiff for a consultive examination in March 2020. She opined Plaintiff could stand and walk 6 hours in an 8-hour workday, sit without limit, frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds, and occasionally balance, stoop, kneel, crouch, crawl, and reach.(AR 1000-02).  The ALJ found Dr. Bejerano's

opinion unpersuasive as it was neither "well supported by Dr. Bejerano's in-person examination of the claimant nor [] consistent with the record as a whole." (AR 27).

Dr. Bejerano limited Plaintiff to only occasional handling, fingering, and feeling. (AR 1002). This conflicts with her own examination results which found Plaintiff's fine motor skills were normal. (AR 998). According to Dr. Bejerano's examination results, Plaintiff was able to pick up small coins with both hands, screw a nut onto a bolt, and write on his chart all without difficulty. (AR 998). Additionally, Dr. Bejerano found Plaintiff's upper and lower bilateral extremity strength normal and determined Plaintiff had only slight decreased grip strength. (AR 998). Furthermore, the ALJ took issue with the supportability of Dr. Bejerano's report due to its ambiguity. (AR 27). Dr. Bejerano fails to specify in which direction Plaintiff could "occasionally reach." (AR 27 citing AR 995–1003). The ALJ's conclusion is supported by substantial evidence.

### Dr. Cynthia Ruzich Psy. D

Plaintiff vested Dr. Ruzich in July 2020 for a psychological evaluation. (1041) Following the 160-minute evaluation, Dr. Ruzich submitted the evaluation results and her medical source statement to the SSA. (AR 1042). Dr. Ruzich states that Plaintiff's only diagnosis is an adjustment disorder, which is a non-qualifying condition. (AR 1042). However, Dr. Ruzich did note that Plaintiff appeared irritable due to pain and that his physical symptoms seem to have affected his performance. (AR 1040). Plaintiff alleges ALJ failed to consider the impact of chronic pain on this ability to function in the RFC despite the requirement that ALJ formulate the RFC considering "all relevant evidence in the record." (OB 12, 20). But the ALJ did note that Plaintiff experienced pain and took Plaintiff's subjective complaints into account when formulating the RFC. (AR 24).

### Dr. Yosef Swartz, MD, and Dr. N. Keer, DO

Dr. Schwartz reviewed Plaintiff's medical records at the initial stage of administrative review. He found Plaintiff could frequently lift and carry up to ten pounds, occasionally lift and carry up to 20 pounds, stand or walk for six hours in an eight-hour workday, and sit for six hours during an 8-hour workday. (AR 116). Dr. Schwartz also

determined Plaintiff could frequently use his bilateral upper extremities for handling and fingering. (AR 117–18). The ALJ found Dr. Schwartz's opinion persuasive but found the opinion of Dr. Keer—who examined Plaintiff's medical records at the reconsideration stage—more persuasive. (AR 27).

The ALJ found Dr. Keer's opinion "most persuasive" because she supported her findings with citations to record evidence and her findings were consistent with objective medical evidence. (AR 27). Plaintiff claims the ALJ's determination that Dr. Keer's opinion was consisted with the record as a whole "cannot stand because Dr. Keer never reviewed the 2020 cervical and lumbar MRIS and the 2021 thoracic MRI, which Plaintiff considered to be "the most significant objective evidence in this case." Defendant contends that the ALJ properly assessed the supportability and consistency of Dr. Keer's opinion and considered the later, more restrictive MRI evidence into the RFC determination. (AN 14). The Court agrees.  There is always some time lapse between a consultant's report and the ALJ's hearing and decision. *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). As the social security regulations do not impose a time limit on the opinions of state agency physicians, the ALJ is entitled to rely on such opinions even if subsequent evidence enters the record. *Id.*

Additionally, the ALJ acknowledged Dr. Keer was not privy to the records received at the hearing level and incorporated the additional limitations derived from MRIs of the cervical, lumbar, and thoracic spine into Plaintiff's RFC. (AR 27). Plaintiff argues the ALJ erred in "establishing limitations based on objective medical testing without the benefit of a medical expert or medical opinion." (OB 14). But it is the ALJ's duty to determine a claimant's RFC using record evidence. 20 C.F.R. § 416.945 (A)(1). The Court finds no error.

Finally, Plaintiff notes that the ALJ briefly confused Dr. Schwartz and Dr. Keer's opinions in her written opinion. We find this confusion harmless as the experts came to essentially the same conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse the decision of the ALJ's decision for harmless error, which

exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (internal quotation marks and citation omitted)).

This record contains multiple conflicting opinions regarding Plaintiff's physical and mental limitations. It is the ALJ's duty to resolve conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). As the ALJ's decision represents a reasonable interpretation of the record evidence, the Court finds no error. *Thomas*, 278 F.3d at 954.

B. THE ALJ ERRONEOUSLY REJECTED PLAINTIFF'S SYMPTOM TESTIMONY IN THE ABSENCE OF SPECIFIC, CLEAR, AND CONVINCING REASONS.

Plaintiff alleges the ALJ erred in failing to credit his symptom testimony without providing clear and convincing reasons. (OB 1, 24). An ALJ must perform a two-step analysis to determine the credibility of a claimant's pain and symptom testimony. *Lingenfelter v. Astrue*, 504 F.3D 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets this burden and there is no evidence of malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the testimony. *Id.* at 1036. Specific, clear, and convincing evidence is that which is "sufficiently specific to permit the [reviewing] court to conclude that the ALJ did not 'arbitrarily discredit a claimant's testimony." *Bunnell v. Sullivan*, 947 F.3d 341, 345 (9th Cir. 1991) (en banc) (internal quotations omitted).

Plaintiff argues the ALJ failed to identify which aspects of his testimony were at odds with objective medical evidence. (AR 24). Although the ALJ must specify what testimony he finds not credible, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), he is not required to perform a "line-by-line exegesis of the claimant's testimony" to meet the clear and convincing standard. *Lambert v. Saul,* 980 F.3d 1266, 1277 (9th Cir. 2020). Additionally, if the ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [his] path may reasonably be discerned.*"*

*Alaska Dep't. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *See Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security).

Following a summary of Plaintiff's symptom testimony, the ALJ found that though Plaintiff "has limitations due to his musculoskeletal impairments . . . these impairments are not completely debilitating as alleged." (AR 24). The ALJ then addressed the evidence she believed contradicted Plaintiff's claims of completely debilitating pain (AR 24–27). As the court can draw a reasonable inference that the ALJ believes Plaintiff's alleged symptoms conflict with objective medical evidence, we will not disturb the determination on this ground.

Plaintiff argues the ALJ failed to properly consider Snow's chronic pain. (OB 24). The Court agrees. Citing Plaintiff's x-ray and MRI results, the ALJ asserts that Plaintiff's musculoskeletal impairments are "not completely debilitating as alleged.' (AR 24). But the ALJ may not reject a claimant's symptom testimony merely due to a lack of corroborating medical evidence. *Robbins v. Soc. Sec. Admin*, 466 F.3d 880, 883 (9th Cir. 2006) ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."). This is because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 CFR § 404.1529(3).

When medical evidence fails to corroborate a Plaintiff's subjective complaints, the ALJ must consider (1) Plaintiff's the daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) treatment, other than medications; (6) any other measures used to alleviate pain or other symptoms, (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) any other factors concerning functional limitations. *Id.* Nevertheless, the ALJ's reasoning for discrediting Plaintiff's symptom testimony relies on a specific quantum of diagnostic imaging and clinical examinations that supports the ALJ's RFC. (AR 24–26). Though the ALJ summarized Plaintiff's testimony and function reports, she does not

discuss Plaintiff's daily activities, pain reduction modalities, the effect of various activities on Plaintiff's chronic pain. The ALJ committed materially harmful error by discounting Plaintiff's symptom testimony based solely on a lack of supporting medical evidence.

C. THE CREDIT-AS-TRUE RULE.

Plaintiff argues this Court should impose the credit-as-true rule and remand for a payment of benefits. (OB 25). When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). However, under rare circumstances, the Court may remand for an immediate calculation of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). To invoke the rule, first, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed with no outstanding issues. *Id*. at 1101. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

It is inappropriate to invoke the rule when "additional proceedings can remedy defects in the original administrative proceeding . . . ." *Trevizo*, 871 F.3d at 682 (quotation marks and citation omitted). It is likewise inappropriate to invoke the rule when there are ambiguities in the record. *Treichler*, 775 f.3d at 1100. Though the ALJ made legal error in failing to provide sufficient reasons for rejecting Plaintiff's symptom testimony, we cannot say the record is without ambiguity and therefore decline to invoke the rule.

V. CONCLUSION

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision and remand for further proceedings.

///

///

**IT IS THEREFORE ORDERED reversing** the February 5, 2020 decision of the Administrative Law Judge as upheld by the Appeals Council November 9, 2021. The Court **remands** this matter for further proceedings consistent with this Order.

Dated this 30th day of March, 2023.

Honorable Steven P. Logan
United States District Judge